IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | |
|---|---|
| ZP No. 332, LLC, | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) Case No. 2:24-cv-611-JKW-DEM |
| HUFFMAN CONTRACTORS, INC., | ) |
| Defendant, | ) |
| and | ) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) |
| Defendant/Counter-Plaintiff Third-Party Plaintiff, | ) |
| v. | ) |
| ATLANTIC UNION BANK, | ) |
| Third-Party Defendant. | ) |

**BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

Plaintiff and Counter-Defendant, ZP No. 332, LLC ("ZP"), in support of its Motion to Compel Defendant and Counterclaimant Travelers Casualty and Surety Company of America ("Travelers") to produce the underwriting documents requested in Request No. 16 of ZP's First Set of Requests for Production to Travelers, states as follows:

**INTRODUCTION**

This case involves Huffman Contractors, Inc.'s ("Huffman") and Travelers' years-long delay in completing a large residential construction project owned by ZP in Norfolk, Virginia (the "Oasis Project" or the "Project"), and the substantial monetary losses ZP suffered as a result. Huffman was the original general contractor on the Project until ZP terminated Huffman for cause in late December

2022. In response to ZP's claim under the performance bond issued by Travelers—a bond designed to protect ZP against Huffman's failure to timely and properly complete the Project—Travelers asserts through its counterclaim in this case that ZP overpaid for Huffman's work, allegedly exposing Travelers to materially greater risk than it anticipated in issuing the bond to Huffman and ZP in the first place. *See, e.g.*, ECF 16, Travelers' Counterclaim ¶¶ 1, 27, 67-69, 88-93 (under Count One – "Material Alteration/Impairment of Suretyship"), 118-120 ("Due to ZP's material alteration of the bonded General Contract, Travelers is entitled under applicable law to reimbursement from ZP for the costs it expended to remedy any and all pre-Takeover Agreement deficiencies in the Work….").

To defend against these allegations, ZP served a request for production seeking, among other things, documents and communications relating to Travelers' underwriting of the surety bond for the Oasis Project, including but not limited to any applications or documents that Huffman submitted to Travelers. *See* First Request for Production, No. 16. Travelers refused ZP's request outright. Travelers has not identified the portions of ZP's request it views as objectionable as required by Rule 34(b)(2)(C), but has instead objected wholesale to ZP's Request No. 16 on the basis of relevance.

Travelers' objection should be overruled. ZP's requests are relevant and narrowly and proportionally tailored to address the underwriting issues raised by Travelers' claim that ZP materially altered the risk Travelers underwrote with respect to the Oasis Project when it issued the performance bond at issue. To adequately respond to these allegations, ZP is entitled to view the Travelers underwriting files concerning the Oasis Project as direct evidence of the risks Travelers considered and accepted during the underwriting process.

ZP therefore submits the present Motion and seeks an order compelling Travelers to produce the documents requested in Request No. 16 of ZP's First Request for Production.[1]

---

[1] ZP reserves the right to seek additional relief on other requests if that becomes necessary.

## FACTS

*The Project*

ZP is the owner and developer of a multifamily apartment complex project located at 4621A & 4621B Pretty Lake Avenue in Norfolk, Virginia, known as The Port at East Beach (formerly known as The Oasis Apartments and Yacht Club). In the spring of 2021, ZP entered into a contract with Huffman, whereby Huffman was to serve as the general contractor on the Project (the "Contract"). The Contract was subject to a guaranteed maximum price totaling $31,272,000 (subject to change orders), and was to be substantially completed by December 6, 2022. Huffman's obligations under the Contract included procuring a performance bond to ensure that the Project would be completed in accordance with the Contract (the "Bond"). Huffman did that through Travelers. *See* Am. Compl. ¶¶ 13-16.

*ZP Calls Huffman's Bond*

By the summer of 2022, Huffman was far behind in its work on the Project, and much of its work was defective, requiring additional time for correction. Despite warnings from ZP, Huffman continued to fall farther behind schedule, and by December 6, 2022, was nowhere near substantial completion. ZP accordingly notified Huffman and Travelers that it intended to terminate the Contract unless Huffman took immediate steps to cure its defaults. Huffman did nothing, and on December 20, 2022, ZP formally terminated the Contract for cause, discharging Huffman and calling on Travelers to complete the Project pursuant to the Bond. *See* Am. Compl. ¶¶ 17-24.

After considerable delay, Travelers selected Perini Management Services, Inc. ("Perini") as the completing contractor for the Project. Perini did not begin substantial work on the Project until June 2022. Even then, Travelers and Perini claimed that it would take eighteen additional months to complete the Project, almost as long as had originally been scheduled for the entire Project. *See* Am. Compl. ¶¶ 25-32.

As detailed in ZP's Amended Complaint, Perini was unqualified and unprepared to complete the Project, but Travelers persisted in using Perini as the completion contractor. The work proceeded at glacial speed. Ultimately, Travelers promised that the work would be substantially complete and ready for occupancy by January 13, 2025. Travelers failed to deliver the Project for occupancy as promised, despite obtaining a temporary certificate of occupancy from the City of Norfolk on January 17, 2025. Despite Travelers' efforts to prematurely close out the Project, it was not actually ready for acceptance and occupancy even as of the end of February 2025. *See* Am. Compl. ¶¶ 33-58.

*This Action*

On September 23, 2024, ZP filed the present action in the Norfolk Circuit Court, seeking judgment against Huffman and Travelers, jointly and severally, for breach of contract and other claims. ECF 1-1. Huffman and Travelers jointly removed the action to this Honorable Court on the basis of diversity of citizenship. ECF 1. Both answered ZP's original complaint, and Travelers filed a counterclaim against ZP seeking a total of "not less than" $33,553,010.38, alleging breaches of the Contract, the Bond, and the Takeover Agreement; and seeking a declaratory judgment discharging Travelers' duties under the Bond. ECF 15, 16. Strangely, Travelers claims that ZP has paid both too much and too little under the Contract. Travelers' claim for damages is based principally on its belief that ZP should have terminated Huffman's contract sooner and by failing to do so ZP paid too much, thereby increasing Travelers' risk beyond that which Travelers contemplated when underwriting the bond.

*ZP's Request for Production & Travelers' Response*

On January 27, 2025, ZP served Travelers with its First Set of Requests for Production of Documents, a copy of which is attached as **Exhibit A**. ZP's Request No. 16 seeks "[a]ll documents and communications relating to Travelers' underwriting of the Bond, including but not limited to

4

documents and communications related to any applications submitted by Huffman in connection with obtaining the Bond."[2]  Travelers responded as follows[3]:

> **OBJECTIONS TO REQUEST NO. 16.**
>
> **Travelers objects to this request because it seeks the discovery of information protected from disclosure by the attorney-client privilege, work-product doctrine, and common-interest/joint defense and prosecution privileges.**
>
> **Travelers objects to this request because it seeks the production of documents that are irrelevant to the claims and defenses of the parties. The issuance of the Bond is not in dispute. Accordingly, Huffman's request for the Bond, and information sent, received, or analyzed in connection with the issuance of the Bond, does not bear on any claim or defense asserted in this Litigation. Therefore, the documents requested in Request No. 16 are beyond the scope of discoverable information under FRCP 26(b)(1).**
>
> **Lastly, these objections assume the submission and entry of a protective order/confidentiality agreement governing the protection of confidential and proprietary information. To the extent a protective order/confidentiality agreement is not entered by the Court, Travelers objects to this request because it seeks proprietary and confidential information.**
>
> **RESPONSE TO REQUEST NO. 16.**
>
> **Travelers stands upon its objection above.**

*See* Ex. B at 24.

Notwithstanding these objections, Travelers has confirmed that its position on Request No. 16 boils down to a relevance objection. Travelers has not served a privilege log and has identified no information protected from disclosure by the attorney-client privilege or work-product doctrine that

---

[2]  ZP also requested documents and communications relating to Travelers' underwriting of any other bonds issued to Huffman within the past 10 years (Request No. 17) and any financial statements and accounting records Travelers has requested or received from Huffman or its agents within the past 10 years (Request No. 18). While these requests are not at issue in this Motion, ZP reserves the right to seek additional relief concerning these (and other) requests as the parties continue to confer in good faith to resolve and narrow discovery disputes raised thus far.

[3]  Under Local Rule 26(C), Travelers' objections were due fifteen days after service, or February 11, 2025. Travelers' responses were due, pursuant to Federal Rule of Civil Procedure 34, on February 26, 2025.  This Motion cites Travelers' February 26 responses, attached as **Exhibit B**.

would be within the scope of Request No. 16. (The other "privileges" Travelers asserts are not in fact privileges but merely shields against waiver.)

## LAW AND ARGUMENT

Travelers complains that ZP's Request No. 16 "seeks the production of documents that are irrelevant to the claims and defenses of the parties." Not so. Travelers' counterclaim alleges that ZP materially altered Travelers' risk exposure on the Project. ECF 16, Counterclaim at Count One. By doing so, Travelers put the risk exposure it originally agreed to undertake and whether that risk materially changed during the scope of the Oasis Project directly at issue. Travelers' underwriting files would show whether Travelers was aware of the risks inherent in guaranteeing Huffman's performance—including Huffman's troubled financial condition, limited resources, and inability to carry out the work it promised under the Contract—long before ZP did anything to allegedly "alter" that risk profile. Travelers' underwriting file would also help answer an equally probative question about mitigation of damages: What did Travelers do to mitigate its exposure before blaming ZP for trying to work through the situation with its contractor?

Because Travelers' underwriting files would show when and how Travelers assessed its risk in agreeing to bond the Contract in the first place, whether and how that risk profile changed during the Project, and what, if anything, Travelers did about it before or after ZP made a claim under the bond, Request No. 16 is directly relevant and proportionally tailored to the claims and defenses in this case. Having opened the door to inquiry regarding Huffman's risk profile and financial status, and Travelers' own prior knowledge of both, Travelers cannot now complain that this information is irrelevant. *See Johnson Controls v. Great Am. Ins. Co.*, Civil Action No. 2:20-cv-3029-RMG, 2021 U.S. Dist. LEXIS 241854, *8-10 (D.S.C. Mar. 29, 2021) (bonding company required to produce underwriting files); *Fid. & Deposit Co. v. Cty. of Lake*, 1998 U.S. Dist. LEXIS 19247, *3-5 (N.D. Ill. Dec. 2, 1998) (same).

Courts in similar situations have required production of underwriting files just like ZP seeks here. In *Johnson Controls*, a subcontractor sought, *inter alia*, production of the underwriting files of the surety for its sub-subcontractor, who had financial problems. The District of South Carolina held that the surety's underwriting files were relevant and discoverable. The court wrote:

> Pursuant to Rule 26, "relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that may be in the case." Plaintiff has demonstrated that documents related to the underwriting files could produce documentation related to Plaintiff's claim as it could shed light on SCS' financial situation and could contain information relevant to the parties' rights and obligations under the Bond.

2021 U.S. Dist. LEXIS 241854 at *9 (quoting *Johnson v. Barner*, 3:19-cv-01129-JMC, 2020 U.S. Dist. LEXIS 219162, 2020 WL 8643793, at *2 (D.S.C. Nov. 23, 2020)). Similarly, the documents sought by ZP in Request No. 16 bear on and reasonably may lead to other information that bears on the issues in the case, such as Travelers' knowledge of Huffman's risk profile and financial condition, Travelers' mitigation, *vel non*, of any damages allegedly caused by ZP's "material alteration" of Travelers' risk, and the parties' rights and obligations under the Bond. The documents, which are limited to Travelers' underwriting file with respect to the bond for the specific project at issue are also proportional to the needs of this case, which involves more than $35 million in damages sought by both parties.

*County of Lake*, *supra*, further illustrates the relevance of underwriting documents in surety discharge cases. There, the defendant county had entered into an agreement with a contractor for the construction of a sheriff's substation. The contractor purchased performance and payment bonds from the plaintiff surety. The surety sued the county, essentially alleging that the surety suffered damages when the county made certain payments before the contractor had provided waivers of subcontractor liens as required by the contract—much like the assertions in Travelers' counterclaim here. *See* ECF 16, ¶¶ 88-94. The surety completed the project, subject to a reservation of rights, after the county had

terminated the contract with the contractor.  As part of discovery, the county sought the underwriting file and documents related to the surety's financial investigation of the contractor, and filed a motion to compel production of those materials.  The court, pursuant to Rule 26(b)(1), granted the motion to compel, finding that the surety's knowledge of the contractor's financial condition was relevant in determining whether the surety should have been discharged or had to defend against the county's assertion of its obligations. 1998 U.S. Dist. LEXIS 19247 at *3-5.

Travelers makes the same arguments in the instant case, and this Court should reach the same ruling:  Travelers' investigation and knowledge of the contractor's financial condition is relevant in determining whether Travelers owes or has violated any duties under the Bond, the Contract, and the Takeover Agreement.  Moreover, Huffman's history, and Travelers' knowledge thereof, are relevant in determining the parties' rights and obligations.

## CONCLUSION

For the foregoing reasons, ZP respectfully requests that this Honorable Court to enter an order compelling production of the documents requested in ZP's Request for Production No. 16, overruling Travelers' objections to ZP's Request for Production No. 16, awarding ZP its reasonable costs, including attorneys' fees, and granting ZP all other just relief.

Dated:  April 16, 2025                                        Respectfully submitted,

/s/ W. Ryan Snow
W. Ryan Snow (VSB 47423)
Mackenzie R. Pensyl (VSB 100012)
Crenshaw, Ware & Martin, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, VA  232510
Phone: (757) 623-3000
Fax: (757) 623-5735
wrsnow@cwm-law.com
mpensyl@cwm-law.com

        Betty S.W. Graumlich (VSB No. 30825)
        Douglas E. Pittman (VSB No. 87915)
        REED SMITH LLP
        Riverfront Plaza – West Tower
        901 East Byrd Street, Suite 1900
        Richmond, Virginia 23219
        Telephone: (804) 344-3400
        Facsimile: (804) 344-3410
        bgraumlich@reedsmith.com
        dpittman@reedsmith.com

        Garrett Nemeroff (admitted pro hac vice)
        Wesley Butensky (admitted pro hac vice)
        REED SMITH LLP
        200 S Biscayne Blvd
        Suite 2600
        Miami, FL 33131
        Telephone: (786) 747-0200
        Facsimile: (786) 747-0299
        gnemeroff@reedsmith.com
        wbutensky@reedsmith.com

        *Attorneys for Plaintiff/Counter-Defendant*
        *ZP No. 332, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all registered counsel of record.

        */s/ W. Ryan Snow*
        W. Ryan Snow (VSB 47423)
        Crenshaw, Ware & Martin, P.L.C.
        150 W. Main Street, Suite 1923
        Norfolk, VA  232510
        Phone: (757) 623-3000
        Fax: (757) 623-5735
        wrsnow@cwm-law.com

        *Attorney for Plaintiff/Counter-Defendant*
        *ZP No. 332, LLC*