IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | | |
|---|---|---|
| ZP No. 332, LLC, | ) | |
|     Plaintiff/Counter-Defendant, | ) ) ) | |
| v. | ) ) | Civil Action No. 2:24-cv-611-JKW-DEM |
| HUFFMAN CONTRACTORS, INC., | ) ) | |
|     Defendant, | ) ) | |
| and | ) ) | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) | |
|     Defendant/Counter-Plaintiff Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ATLANTIC UNION BANK, | ) ) | |
|     Third-Party Defendant. | ) | |

**ZP No. 332, LLC'S REPLY
IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY**

ZP No. 332, LLC ("ZP"), in support of its Motion to Compel Travelers Casualty and Surety Company of America ("Travelers") to produce its underwriting files as requested in ZP's Request No. 16, and in reply to Travelers' Memorandum in Opposition to the same, states as follows:

**SUMMARY**

ZP's Request No. 16 properly seeks underwriting documents relevant to Travelers' risk assessment on the project—a matter Travelers put at issue by asserting, as a central premise of its Counterclaim, that ZP's actions exposed Travelers to materially greater risk than it originally anticipated. *See* ECF 16, Counterclaim ¶¶ 1, 27, 67-69, 88-93 (Count One), 118-120.

Travelers' Opposition Memorandum misstates both the nature of ZP's defense to Travelers' Counterclaim and the basis for ZP's request for Travelers' underwriting files. Travelers argues that ZP's request is irrelevant because, in Travelers view, Virginia law "does not permit [ZP] to question whether the surety suffered prejudice as a result of its material variation from the bonded contract." Opp. Mem., p. 3. But ZP's actual defense is that it did not deviate from the terms of its contract with Huffman and, even if it did, any such deviation was not "material." Its request targets Travelers' allegation that ZP's payments to Huffman materially altered the bonded contract and accompanying risk—particularly, the risk that Huffman would breach the contract and be financially unable to remedy that breach. Travelers' underwriting documents should show the nature of the allegedly altered risk that Travelers bonded, including Huffman's financial condition and the scope of the work Travelers thought it may have to take over.

Travelers cites *Southwood Builders, Inc. v. Peerless Ins. Co.*, 235 Va. 164 (1988), a case where a general contractor actually changed the contract terms and made advanced payments with no architect authorization, all without the surety's knowledge. The facts of *Southwood*, including the significant deviation from the terms of the contract in that case, render *Southwood* substantively inapposite. But that is an issue to be resolved later. For purposes of this discovery dispute, *Southwood* actually highlights the need for discovery here.

The rule of *Southwood* centers on *unauthorized* payments, made under a fundamentally *changed* contract, while the surety was *unaware* of the spiraling decline of its bond principal. By contrast, ZP's payments were consistent with the payment schedule under the contract and ZP and Huffman did not change any contract terms. Whether Travelers knew of Huffman's spiraling decline is completely unknown to ZP unless ZP is able to investigate Travelers' underwriting files—both before and after the project began. The same files should show what Travelers did to mitigate its

alleged damages as its risk changed during the project, a highly relevant defense for ZP regardless of *Southwood*.

Put simply, the issue on this Motion to Compel is not Travelers' prejudice; it is Travelers' risk assessment, including related topics like mitigation, which Travelers' claims and defenses put at issue. Case law is replete with examples where material alteration claims fail in similar situations. *See, e.g., Int'l Fid. Ins. Co. v. Western Va. Water Auth.*, 2012 U.S. Dist. LEXIS 141778, *19-21 (W.D.Va. 2012) (distinguishing *Southwood* and rejecting material alteration claim because prepayment of retainage was not "material" and the obligee did not act in bad faith); *Mergentime Corp. v. Washington Metro. Area Transit Auth.*, 775 F. Supp. 14, 18-20 (Dist. D.C. 1991) (discussing *Southwood*, collecting cases, and noting "trend in the law" against dischargeability of a surety in the absence of prejudice). Request No. 16 is essential to ZP's ability to address this merits issue later in the case.

## ARGUMENT

### I. Travelers' underwriting documents are relevant to its material alteration claim.

In its Opposition Memorandum, Travelers mistakenly argues that ZP's only purpose in seeking underwriting documents is "to rifle through Travelers' files based upon a defense that is not recognized under Virginia law." Opp. Mem., p. 11. To the contrary, the underwriting documents are relevant to ZP's ability to contest Travelers' claim that its risk was materially altered on the project. Regardless of prejudice, Travelers must establish its original risk assessment in order to prove that its risk was altered. As one court explained, "In other words, a material modification to a contract is not the same as a modification that materially increases the surety's risk." *Mergentime*, 775 F. Supp. at 19. Yet under Travelers' theory of discovery, only Travelers will know that baseline risk assessment and how it might have changed—at least, until ZP learns it for the first time at trial.

3

A typical underwriting file should have considerable information about the bond principal (here, Huffman) and the liability and credit risks the principal presents. This includes items like financial information (credit reports, financial statements, bank references, etc.), business experience (previous projects, track record, relevant industry experience, etc.), reputational information, legal history, and at the end, the surety's assessment of the anticipated risk of bonding the principal on the particular project. The same file would also have any information that might change the principal's risk profile as the project proceeds, including actions or recommendations to mitigate exposure.

Here, of course, whether this typical information is present in Travelers' underwriting files remains unknown to ZP, since ZP has not seen the files. The point of the Motion to Compel is that Travelers should not be permitted to prejudge the relevance of that information, at ZP's considerable detriment, having put it at issue in the Counterclaim. That approach was rejected twice in the cases ZP cited in its Motion. *See Johnson Controls v. Great Am. Ins. Co.*, 2021 U.S. Dist. LEXIS 241854, *8-10 (D.S.C. 2021) (bonding company required to produce underwriting files); *Fid. & Deposit Co. v. Cty. of Lake*, 1998 U.S. Dist. LEXIS 19247, *3-5 (N.D. Ill. Dec. 2, 1998) (same).

While Travelers is correct that *Johnson Controls* is factually different, the holding still applies directly because the issue in the case was whether a surety properly assessed the risk that a subcontractor, would fail and the resulting financial impact. *Id*. at *5. As the court explained, noting the breadth of the discovery rules, "documents related to the underwriting files could produce documentation related to Plaintiff's claim as it could shed light on SCS' financial situation and could contain information relevant to the parties' rights and obligations under the Bond." *Id*. at *9. And even Travelers acknowledges that *County of Lake* is on point, distinguishing it only by noting that it applies Seventh Circuit law.

In short, there are reasons other than prejudice that make Travelers' files relevant. Similar to the underwriting files in *Johnson Controls* and *County of Lake*, the documents ZP seeks in Request

4

No. 16 bear on—and reasonably may lead to other information that bears on—multiple issues in this case, such as Travelers' knowledge of Huffman's risk profile and financial condition entering the project, Travelers' baseline risk assessment based on that knowledge, Travelers' knowledge of the payments and other factors that it claims changed its risk during the project, the way in which Travelers documented any risk alteration internally, and Travelers' efforts to mitigate its exposure, if any. Travelers cannot complain that this information is irrelevant after opening the door to it in its Counterclaim by claiming that ZP's conduct "materially" altered the construction contract and risk that Travelers underwrote. After all, Travelers seeks $10 million in Count I, and complete discharge of its surety obligations in Count III, based on its "material alteration" theory.

## II. Travelers' prejudice argument is a diversion.

Travelers nonetheless attempts to keep its internal files secret by arguing that ZP's only basis for discovering them is to show that Travelers has not suffered prejudice by ZP's payments, a singular purpose that Travelers claims is impermissible under *Southwood*. As noted above, however, Request No. 16 is relevant in other ways, including Travelers' knowledge of the project events and its efforts to mitigate its damages, if any.

Yet even if prejudice were at issue, *Southwood* is distinguishable and Travelers' heavy reliance on it is misplaced. In *Southwood*, after a subcontractor fell behind on a bonded project for the Gloucester County Courthouse, the subcontractor and general contractor modified the original contract by entering into an alternative agreement under which the general contractor arranged to pay directly for another crew to do the work as well as any materials needed to complete the project. *Id*. at 167. The general contractor then made advance payments to the subcontractor and the other crew, and paid for extra materials, without authorization from the architect. *Id*. All the while, the surety was unaware of the increasingly dire situation.

It was the alternative agreement and unauthorized payments, without the surety's consent or knowledge, that led the Virginia Supreme Court to affirm a discharge of the surety without any showing of prejudice.  *Id*. at 171 (holding "[t]he monetary impact of Southwood's deal with United was substantial … Southwood made substantial payments to United before they were due.").  That factually unique situation is not duplicated here.

ZP and Huffman did not enter an alternative agreement, ZP did not make any unauthorized payments, and whether Travelers knew of Huffman's dire situation is unknown to ZP.  ZP exercised its discretion to make payments to Huffman as it was entitled to do under the contract. Unlike in *Southwood*, Gen. Cond. § 2.1.1 of the contract between ZP and Huffman gave ZP complete discretion whether to engage the architect in contract administration, and § 2.1.4 stated explicitly that, "Unless otherwise provided, the Architect shall have *no responsibility for the review and approval of the Contractor's payment applications*."  ECF 62-1, p. 71.  In other words, payments to Huffman were within the sound business judgment of ZP, and Travelers does not claim that even one of them was "unauthorized."

In these circumstances, this Court should conclude (later in the case) that this case requires a different substantive outcome from the one in *Southwood*.  To hold otherwise would effectively strip an owner of the ability to reasonably work with its contractor to potentially avoid termination.  Courts have long recognized this flaw in Travelers' argument: "As Judge Posner has pointed out, 'whether the advances increase the surety's risk depends on what the principal did with them; if he used them on the project the amount at risk to the surety may be unaffected.'" *Mergentime*, 775 F. Supp. at 19 (quoting *Argonaut Ins. Co. v. Cloverdale*, 699 F.2d 417, 419 (7th Cir. 1983)).  Similarly, whether ZP's discretionary payments materially increased Travelers' risk depends on what risk Travelers underwrote and ultimately undertook.  And as noted above, numerous courts have rejected claims like Travelers based on factual or legal distinctions from *Southwood*, even within Virginia.  *See, e.g.,*

*Western Va. Water Auth.*, 2012 U.S. Dist. LEXIS 141778, *19-21 (W.D.Va. 2012) (distinguishing *Southwood* and rejecting material alteration claim); *Mergentime*, 775 F. Supp. at 18-20 (collecting cases and noting "trend in the law" against Travelers' position here).

The issue now, however, is solely one of discovery. On that issue, consistent with the breadth of Rules 26(b) and 34(a), Travelers' underwriting files are discoverable to support ZP's ability to challenge Travelers' position that *Southwood* applies (for example, to show whether Travelers knew of its principal's dire condition), to establish Travelers' knowledge of project events (for example, to show whether Travelers knew of the payments or other issues it complains of in its Counterclaim), to evaluate Travelers' mitigation efforts, and to defend against Travelers' Counterclaim. The mere fact that Travelers' underwriting assessments might have occurred both before and during the project does not shield them from discovery.[1]

Because Request No. 16 seeks documents directly related to the underwriting issues raised by Travelers' Counterclaim, and ZP's request is proportionally tailored to the needs of this case, Travelers' objection to producing them should be overruled.

## CONCLUSION

For the foregoing reasons, ZP respectfully requests that this Honorable Court enter an Order compelling production of the documents sought in Request No. 16, overruling Travelers' objections to Request No. 16, and granting ZP all other relief sought in its Motion.

Dated: April 28, 2025                             Respectfully submitted,

---

[1] Travelers' argument that most of its underwriting information was generated before the bond was issued is not a viable objection. Discovery about Travelers' risk assessment, and how it became "altered" during the project, necessarily requires inquiry into the baseline risk assessment that led to the bond. In fact, Travelers itself requested (and ZP agreed to produce) pre-contract documents from ZP, just as underwriting documents would be pre-bond documents from Travelers.

7

*/s/ W. Ryan Snow*
W. Ryan Snow (VSB 47423)
Mackenzie R. Pensyl (VSB 100012)
Crenshaw, Ware & Martin, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, VA  232510
Phone: (757) 623-3000
Fax: (757) 623-5735
wrsnow@cwm-law.com
mpensyl@cwm-law.com

Betty S.W. Graumlich (VSB No. 30825)
Douglas E. Pittman (VSB No. 87915)
REED SMITH LLP
901 East Byrd Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 344-3400
Facsimile: (804) 344-3410
bgraumlich@reedsmith.com
dpittman@reedsmith.com

Garrett Nemeroff (admitted pro hac vice)
Wesley Butensky (admitted pro hac vice)
REED SMITH LLP
200 S Biscayne Blvd, Suite 2600
Miami, FL 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299
gnemeroff@reedsmith.com
wbutensky@reedsmith.com

*Attorneys for Plaintiff/Counter-Defendant ZP No. 332, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all registered counsel of record.

/s/ W. Ryan Snow
W. Ryan Snow (VSB 47423)
Crenshaw, Ware & Martin, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, VA  232510
Phone: (757) 623-3000
Fax: (757) 623-5735
wrsnow@cwm-law.com

*Attorney for Plaintiff/Counter-Defendant ZP No. 332, LLC*