UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ZP NO. 332, LLC,

    **Plaintiff,**

v.                                  Civil Action No. 2:24-cv-611

**HUFFMAN CONTRACTORS, INC., et al.,**

    **Defendants.**

## OPINION AND ORDER

This construction case is before the court on Plaintiff and Counter-Defendant ZP No. 332, LLC's ("Plaintiff" or "ZP") Motion to Compel. (ECF No. 73). Plaintiff seeks production of the underwriting file for the bond at issue in the case from Travelers Casualty and Surety Company of America ("Defendant" or "Travelers"). Br. Supp. Mot. Compel Disc. ("Pl.'s Br.") (ECF No. 74, at 1-2, 5-6). Travelers opposed the motion, urging that its underwriting file is irrelevant to defending against its counterclaim, obviating the need for production. Travelers Cas. & Sur. Co. Am.'s Mem. Opp'n to ZP No. 332, LLC's Mot. Compel Disc. ("Def.'s Br.") (ECF No. 75, at 11). The court heard arguments of counsel on May 7, 2025. For the reasons stated on the record and explained below, the court GRANTS in part and DENIES in part Plaintiff's Motion to Compel, (ECF No. 73).

### I.    BACKGROUND

ZP and Huffman Contractors, Inc. ("Huffman") executed a $31.2 million construction contract in April 2021 to build an apartment complex in Norfolk, Virginia, with ZP serving as the owner and Huffman serving as the general contractor. Am. Compl. (ECF No. 62, ¶¶ 1-2, 13-15). The same month, Huffman and Travelers executed and issued to ZP performance and payment

1

bonds that guaranteed Huffman's performance of the contract and payment of the subcontractors and suppliers. Id. at ¶ 16. ZP alleges that by summer of 2022, Huffman fell behind schedule on the project and that ZP began to identify deficiencies in the work. Id. ¶¶ 18-21. On December 20, 2022, ZP formally terminated Huffman from the project and called on Travelers to perform under the bond. Id. ¶¶ 22-27. Plaintiff later brought several claims against Huffman and Travelers related to their allegedly deficient performance under the contract and bond. Id. ¶¶ 59-87. Such claims are not the subject of the discovery dispute at issue.

Travelers filed several counterclaims against ZP, including a claim that ZP materially altered the contract between ZP and Huffman. Def.'s Answer, Affirmative Defenses, Countercl., and Third-Party Compl. ("Countercl.") (ECF No. 16, ¶¶ 44-99). Travelers alleges that ZP overpaid Huffman nearly $7.5 million for work performed between the summer of 2022 and December 2022 because ZP continued to pay Huffman despite knowing that it completed deficient work. Id. ¶¶ 88-89; Def.'s Br. (ECF No. 75, at 2). Travelers alleges that this overpayment constitutes a material alteration of the contract, entitling it to reimbursement from ZP for the costs expended to remedy deficiencies in the work performed prior to Travelers' takeover of the project. Countercl. (ECF No. 16, ¶ 93).

On April 16, 2025, ZP filed the present Motion to Compel. (ECF No. 73). ZP seeks to compel Travelers to produce documents related to its underwriting file for the bond at issue under Number 16[1] of its Requests for Production of Documents. Pl.'s Br. (ECF No. 74, at 2, 5). ZP

---

[1] Requests for Production of Documents Nos. 17 and 18 similarly seek documents related to Travelers' underwriting files. Specifically, these requests ask for "[a]ll documents and communications relating to Travelers' underwriting of any other bonds issued to Huffman within the past 10 years," and "[a]ny financial statements and accounting records [y]ou have requested or received from Huffman or its agents within the past 10 years." Pl.'s Br. Ex. B (ECF No. 74-2, at 24-25). At the hearing, the parties reported that Travelers has not yet produced the documents underlying these requests. ZP does not seek to compel a response to either request in this motion.

2

argues that it needs access to the underwriting file because "the files would show whether Travelers was aware of the risks inherent in guaranteeing Huffman's performance—including Huffman's troubled financial condition, limited resources, and inability to carry out the work it promised under the Contract—long before ZP did anything to allegedly 'alter' that risk profile." Id. at 6. It also claims that the files might reveal whether Travelers attempted to mitigate its exposure before learning it would be taking over the project. Id.

Travelers responds that ZP seeks to compel production of documents to support a defense to Travelers' material alteration counterclaim that, under Virginia law, "does not exist." Def.'s Br. (ECF No. 75, at 1) (citing Southwood Builders, Inc. v. Peerless Ins. Co., 366 S.E.2d 104 (Va. 1988). Travelers equates ZP's request with an effort to gain information to "challenge whether Travelers suffered prejudice from ZP's material overpayment," which, according to Travelers, is not a defense under Virginia law. Id. at 11. Travelers claims that because ZP must confine its discovery requests to documents that may support a cognizable defense, the documents requested are irrelevant and not discoverable. Id. at 12 (citing WLR Foods, Inc. v. Tyson Foods, Inc., 65 F.3d 1172, 1184 (4th Cir. 1995)).

ZP replied, clarifying that "the issue on this Motion to Compel is not Travelers' prejudice; it is Travelers' risk assessment, including related topics like mitigation, which Travelers' claims and defenses put at issue." ZP No. 332, LLC's Reply Supp. Mot. Compel Disc. ("Pl.'s Reply") (ECF No. 83, at 3). It again specifies that the underwriting files could "support ZP's ability to challenge Travelers' position that Southwood applies (for example, to show whether Travelers knew of its principal's dire condition), to establish Travelers' knowledge of project events (for example, to show whether Travelers knew of the payments or other issues it complains of in its

3

Counterclaim), to evaluate Travelers' mitigation efforts, and to defend against Travelers' Counterclaim." Id. at 7.

## II. ANALYSIS

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, information that may not be admissible at trial may be discoverable, "as long as it is 'relevant to the subject matter involved in the pending action.'" WLR Foods, Inc. v. Tyson Foods, Inc., 65 F.3d 1172, 1184 (4th Cir. 1995) (citing Fed. R. Civ. P. 26(b)(1)). Courts evaluate relevance by examining the substantive law that applies to the parties' claims and defenses. See id. Therefore, discovery is properly denied when applicable law prohibits the requesting party from asserting the defense which the discovery is sought to support. Id. at 1184-86 (affirming denial of discovery motion seeking documents about rationality of directors' decision because Virginia law forbids inquiry into reasonableness of directors' decisionmaking). The parties agree that Virginia law of contracts and suretyship applies here.

Relevant to Travelers' counterclaim, the Supreme Court of Virginia decided in Southwood Builders, Inc. v. Peerless Insurance Co. that a surety may be discharged from its bond obligations when it can show that the owner materially varied from the principal contract. 366 S.E.2d 104, 108 (Va. 1988). In that case, Southwood Builders, Inc. ("Southwood"), entered into a contract with the Board of Supervisors of Gloucester County to construct a courthouse and office building. Id. at 105. Southwood executed a subcontract with United Drywall & Plastering Co. ("United"). Id. The subcontract required United to obtain payment and performance bonds, which United received from Peerless Insurance Company. Id. The subcontract also required that "[a]ll work shall be done under the direction of the Architect." Id.

4

United soon fell behind on the work. Id. Instead of terminating United, Southwood asked United to add another crew to the project; when United declined, Southwood proposed that it would pay for the extra crew and the additional materials required for the job. Id. at 105-06. The architects were unaware of this deal. Id. at 106. Under this arrangement, United became indebted to Southwood. Id. Southwood continued to pay United, despite the debt and the lack of progress on the project. Id. Later, United determined that it could not complete the job, and Southwood called upon Peerless to finish the job. Id. By the end of the project, Southwood requested that Peerless pay the extra costs of completing the work under the bond. Id. When Peerless refused, Southwood initiated suit, in which the trial court concluded that Southwood could not recover from Peerless because Southwood materially varied from the subcontract. Id.

On appeal, Southwood argued that a material variation alone was insufficient to discharge a surety from its obligations, claiming instead that "both a material variation in the principal contract as well as prejudice to the surety" must exist. Id. at 107. The Supreme Court of Virginia rejected this argument. Relying on <u>American Surety Company v. Plank & Whittsett, Inc.</u>, the Court determined that Virginia courts are not required to look beyond the question of material variation of the contract to decide whether a surety should be discharged. Id. (citing 165 S.E. 660 (Va. 1932)). Specifically, the Court held that "[a] separate showing of prejudice to the surety is unnecessary because a material deviation, in itself, establishes sufficient prejudice." Id. 108.

Southwood materially deviated by paying the subcontractor before the payment was due and without the architects' approval—"[s]uch a procedure diminishes funds that should have been available to the surety in case of default, eliminates the architects' assurance that payments to the contractor are being used for the job, and undermines the inducement to the contractor to finish the work on schedule in order to be paid." Id. The Court determined that "[t]he proof of the danger

5

of the deviation agreed to by Southwood is in the result: United was to repay Southwood by deductions from United's progress payments. But there was very little progress, if any, and United wound up indebted to Southwood . . . ." Id.

"Payments of substantial sums before they are due . . . are generally held to be such variations in the terms of the contract as will discharge the surety from its obligations to the owner." Id. at 107 (citing Plank & Whittsett, Inc., 165 S.E. at 663). This rule[2] is predicated on the policy reasons put forth in Southwood Builders: that "such a poor payment procedure" diminishes funds that should have been available to the surety in case of default and eliminates the incentive for the contractor to finish its work on schedule. Cont'l Ins. Co. v. City of Virginia Beach, 908 F. Supp. 341, 347 (E.D. Va. 1995). "Substantial prepayment diminishes a key piece of the collateral a surety considers when it decides to enter into a bond agreement with a contractor." Int'l Fid. Ins. Co., 2012 WL 4503191, at *6. This is because sureties agree to back certain projects based, in large part, on the known risks expressed in the original contract. Thus, "[w]hen the surety is required to make reimbursements for loss occasioned by the default of the principal, it has a right to require the owners to show how and in what manner they have performed their part of the contract . . . ." Plank & Whittsett, Inc., 165 S.E. at 666.

Plaintiff's Motion to Compel thus presents the question of whether Travelers' pre-claim underwriting file is relevant to any defense ZP may raise against Travelers' material alteration counterclaim. In the parties' detailed meet and confer efforts, ZP specified its reasons for seeking

---

[2] The Court in Southwood Builders also looked to the proportion of the amount of overpayment compared to the original contract price in determining whether Southwood materially varied from a contract. Id. at 108 ("The combined total of the amounts overpaid to United and the material that had to be replaced is in excess of $31,000. This figure must be compared to an original contract price of $79,500."); Int'l Fid. Ins. Co. v. W. Va. Water Auth., No. 7:1-cv-441, 2012 WL 4503191, at *6 (W.D. Va. Sept. 28, 2012) (distinguishing Southwood Builders because smaller sum in dispute compared to total contract price and lack of bad faith).

the underwriting file. Emails included as exhibits in Travelers' response make clear that ZP is narrowly seeking the underwriting information to defend against Travelers' material alteration claim, arguing that the information "is discoverable because it is relevant to Travelers' surety discharge claim and the credibility of Travelers' witnesses to the extent they intend to testify that ZP's conduct materially altered the risk Travelers agreed to insure when issuing the bond to Huffman." Def.'s Br. Ex. A (ECF No. 75-1, at 2). Without calling it a prejudice argument, ZP maintained in its briefing and at the hearing that it is requesting access to Travelers' pre-claim underwriting files because it wants to assess the risk Travelers perceived in deciding to issue the bond. Pl.'s Reply (ECF No. 83, at 2-5, 7). In making this argument, ZP misunderstands the risks relevant to the material alteration inquiry under Virginia law.

The court takes no position on whether ZP materially deviated from the contract but finds that the documents in Travelers' underwriting file from before ZP's demand against the bond are not relevant to its defense of the material alteration claim, and therefore not discoverable. Apart from the construction contract itself, risks considered by Travelers during its evaluation of Huffman in issuing the bond are irrelevant to whether ZP materially altered the contract during performance. The question of material alteration centers around the obligee's actions—in this case, the actions of ZP—not the surety's actions or knowledge. This is because the contract itself defines the surety's expectations regarding that aspect of the risk it agreed to take on. Thus, in determining whether a party "materially" varied from a contract, a court will look to the contract terms, the evidence of performance and payment, and whether the obligee's actions altered the surety's contract-based expectations of risk.

ZP is unable to offer any other reason for its need for the documents that would not lead to information supporting an argument disproving prejudice. In fact, ZP almost exclusively cited

7

authority outside of Virginia and the Fourth Circuit in support of its need for this information—authority that requires a separate showing of prejudice to the surety in a material alteration inquiry. See Mergentime Corp. v. Wash. Metro. Area Transit Auth., 775 F. Supp. 14, 19-20 (D.D.C. 1991) (requiring a separate showing of prejudice); Fid. & Deposit Co. of Md. v. Cnty. of Lake, No. 97 C 6276, 1998 WL 852933, at *2 (N.D. Ill. Dec. 7, 1998) (ordering production of documents because may be relevant to prejudice suffered by surety); see also Fid. & Deposit Co. of Md. v. Cnty. Of Lake, No. 97 C 6276, 2000 WL 347770, at *5 (N.D. Ill. Apr. 3, 2000) (applying precedent requiring separate showing of prejudice). ZP also claims that it needs these documents to demonstrate that Travelers knew of Huffman's deficient and off-schedule work in this project but could not explain why it believed such documents would be contained in the pre-claim underwriting file, or why that information would be relevant to showing that Southwood Builders is inapplicable.

ZP's arguments identify no other purpose for discovery of these documents other than to support an argument that Travelers was not prejudiced by alteration of the contract because it may have expected Huffman's failure to perform. As the Supreme Court of Virginia expressly held: "[a] separate showing of prejudice to the surety is unnecessary because a material deviation, in itself, establishes sufficient prejudice." 366 S.E.2d at 108. The defense of material alteration relates to the construction contract terms and the actions of the obligee in altering the terms of the contract—these variations, alone, prejudice the surety. As a result, the surety's knowledge, perceived risk, and notice of the contractor's likelihood of default at the time the bond was issued is irrelevant to the inquiry.

ZP has identified prior surety cases where courts ordered underwriting files produced. See Johnson Controls v. Great Am. Ins. Co., No. 2:20-cv-3029, 2020 U.S. Dist. LEXIS 241854, at *9

(S.D. Ohio Aug. 7, 2020) (construing relevance broadly and finding underwriting documents could "shed light on" party's financial condition); Fid. & Deposit Co. of Md., 1998 WL 852933, at *2. But these cases rely almost entirely on the general construction in favor of broad discovery or surety law that considers prejudice in the material alteration inquiry. As made clear in its briefing, the discovery ZP seeks is irrelevant to any defense it could raise in response to Travelers' counterclaim under Virginia law. This court cannot allow ZP to search for documents to support an impermissible defense under Virginia law. See WLR Foods, Inc., 65 F.3d at 1184; see also Boyce v. Bennett, No. 2:12-cv-249, 2015 WL 12621036, at *2 (E.D. Va. May 21, 2015) (citation omitted) ("[D]iscovery should not devolve into a fishing expedition for irrelevant or cumulative information . . . ."). Moreover, denying in part ZP's Motion to Compel does not leave ZP without any documents related to Travelers' counterclaim. A large volume of discovery has already been conducted in this case. Travelers asserted at the hearing that it maintained two files related to the bond at issue—an underwriting file and a claim file. Travelers has already produced the entirety of its non-privileged claim file for this project. And out of its thirty-one requests for production, ZP has only sought to compel Travelers' production for a single request. Therefore, the court largely denies Plaintiff's Motion to Compel.

ZP also asserts an interest in finding documents related to Travelers' mitigation of damages. It is unlikely that Travelers' pre-claim underwriting file would contain evidence related to mitigation. But, because the federal rules contemplate broad discovery, the court directs Travelers to produce all documents in its underwriting file or related to its underwriting file for the bond at issue in this case that post-date December 20, 2022, when it received notice of ZP's claim against the bond. See Nat'l Union Fire Ins. Co. of Pitt. v. Murray Sheet Metal Co., Inc., 967 F.2d

9

980, 983 (4th Cir. 1992) (noting that "the discovery rules are given a 'broad and liberal treatment'").

### III. CONCLUSION

For the foregoing reasons and for the reasons stated on the record, the court GRANTS in part and DENIES in part Plaintiff's Motion to Compel, (ECF No. 73). Travelers is DIRECTED to produce all documents and communications relating to Travelers' underwriting of the bond at issue in this case that post-date December 20, 2022. Under Rule 26, any document contained in Travelers' pre-claim underwriting file is otherwise irrelevant to the subject matter involved in the pending action because ZP cannot disprove prejudice in defense of a material alteration claim under Virginia law.

IT IS SO ORDERED.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER,
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
May 16, 2025

10