**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

ZP NO. 332, LLC,

    Plaintiff,

    v.

HUFFMAN CONTRACTORS, INC.,

    Defendant.

Case No. 2:24-cv-611

## OPINION & ORDER

This Opinion seeks to untangle one of many knots left over after trial and to do justice to the parties despite their attorneys' misunderstanding of the law and mishandling of the record.

When it entered judgment, the Court denied Plaintiff ZP No. 332, LLC's request to award pre-judgment interest on top of the jury's damages verdict, because ZP failed to prove that the parties stipulated to designate the Court as the factfinder on that issue. ECF No. 430. ZP now asks the Court to reconsider that decision. Its motion to alter judgment (ECF No. 440) presents new evidence that demonstrates how the parties came to an incorrect—but shared—understanding of the law. Reluctantly, the Court will construe the parties' common belief about who would find the facts related to pre-judgment interest as a stipulation within the meaning of Fed. R. Civ. P. 39(a). On that basis, the Court will find the facts required and award pre-judgment interest consistent with Virginia law.

## I.    BACKGROUND

In this diversity action based on Virginia substantive law, ZP pleaded pre-judgment interest and demanded "a trial by jury on all claims so triable." ECF No. 62 at 18. ZP proved to a jury $9,137,149.00 in compensatory damages and the date of Defendant Huffman Contractors, Inc.'s breach of contract. ECF No. 414 (Questions 2 and 3).

In a motion for entry of judgment, ZP sought pre-judgment interest, for a total judgment of $11,556,298.70. ECF No. 420 at 3. Neither the motion nor the memorandum in support thereof made any mention of the parties stipulating to remove pre-judgment interest from the jury, in favor of the Court determining the issue. *See* ECF Nos. 419, 420 (arguing only that the parties agreed to the special verdict form).

Huffman opposed ZP's request for pre-judgment interest, contending that because the parties did not stipulate to make the Court the factfinder on that issue, ZP could only have obtained pre-judgment interest by proving it to the jury, which ZP did not do. EF No. 421 at 1–2.

In its reply brief—for the first time—ZP claimed the parties *had* entered a stipulation, by jointly submitting a proposed special verdict form that included language following Question 2 that instructed the jury it "need not add interest on [the damages award]" because "the Court [would] consider this issue following [the] verdict." ECF No. 427 at 3; ECF No. 396 at 2.

Prior to trial, the parties entered other agreements that undisputedly constituted stipulations to remove factual issues from the jury: Two months before the jury trial, the parties submitted a joint motion to bifurcate, asking the Court to hold a bench trial on "(1) ZP's entitlement to, and the quantification of, attorneys' fees and costs incurred in this proceeding; [and] (2) the [p]arties' disputes regarding the factors that determine the remaining balance of the penal sum and the final calculation of the penal sum." ECF No. 253 at 5. Then, three days before the jury trial, the parties submitted a filing in which they "stipulate[d] that the Court may act as the finder of fact on [another] issue: Whether the damages in the jury's response to Question No. 2 were caused, in whole or in part, by negligent acts or omissions by Huffman, its subcontractors, suppliers or employees or anyone working on Huffman's behalf." ECF No. 398 at 1.

In ruling on the motion for entry of judgment, the Court concluded that ZP failed to demonstrate the language following Question 2 in the special verdict form amounted to a stipulation to submit factfinding on pre-judgment interest to the Court. ECF No. 430 at 6–8. So the Court entered judgment in the amount of the jury's verdict, plus post-judgment interest at the statutory rate. *Id* at 8–9.

ZP now contends that the Court "obvious[ly] and observabl[y] misapprehend[ed] [] the parties' agreement" to have the Court decide pre-judgment interest. ECF No. 441 at 7.

In support of ZP's motion to alter judgment, Attorney Kim Watterson submitted a declaration describing a conversation she had with counsel for Huffman

about the language in the jointly proposed special verdict form. ECF No. 441-1. Attorney Watterson states that when she submitted a draft of the verdict form to Huffman's counsel, Huffman's counsel "did not edit or make any comment on the instructive language following Question 2," but he did suggest that Question 3 was unnecessary. *Id.* ¶ 6. In response, Attorney Watterson "explained that, as indicated in the language following Question 2, the verdict form was designed so that the Court could decide all issues relating to pre[-]judgment interest other than the date of the breach" and that Question 3 served to provide the Court with the date from which pre-judgment interest would run. *Id.* ¶ 7. Huffman's counsel "readily agreed" with that explanation. *Id.* ¶ 8.

ZP provides no evidence that the parties drafted—or even discussed—a stipulation regarding factfinding on pre-judgment interest prior to the conversation detailed in the Watterson declaration.

## II.    LEGAL STANDARDS

### A.    Factfinding on Pre-Judgment Interest

Virginia Code § 8.01-382[1] "provides for the discretionary award of pre[-]judgment interest by the trier of fact, who may provide for such interest and fix the

---

[1] Where subject matter jurisdiction depends on diversity, state law governs an award of pre-judgment interest. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Whether a jury or a judge is the appropriate factfinder on a particular issue is a procedural question governed by federal law. *See Simler v. Conner*, 372 U.S. 221, 222 (1963).

time of its commencement." *Dairyland Ins. Co. v. Douthat*, 449 S.E.2d 799, 801 (Va. 1994) (emphasis removed and quotation marks omitted).

When a party demands a jury trial on an issue that carries a federal right to a jury,[2] a jury "must" try all the issues on which the demand is made unless "the parties . . . file a stipulation to a nonjury trial or so stipulate on the record." Fed. R. Civ. P. 39(a).

**B.      Motions to Alter Judgment Under Fed. R. Civ. P. 59(e)**

Rule 59(e) allows a district court to "alter or amend a judgment" to "correct a clear error of law or prevent manifest injustice." Fed. R. Civ. P. 59(e); *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (citations and quotation marks omitted).[3]

Clear error in the Rule 59(e) sense occurs where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Harvey*, 532 F.3d 326, 336–37 (4th Cir. 2008); *see also United States v. Martinez-Melgar*, 591 F.3d 733, 738 (4th Cir. 2010)

---

[2] There is a federal right to a jury trial on the question of pre-judgment interest, and neither party argues otherwise. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989) (Seventh Amendment confers a jury right in cases that are legal as opposed to equitable and that involve private rather than public rights); *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("A claim for money due and owing under a contract is quintessentially an action at law.") (citation and quotation marks omitted); *Shepard v. Capitol Foundry of Virginia, Inc.*, 554 S.E.2d 72, 76 (Va. 2001) (pre-judgment interest is part of actual damages).

[3] A Rule 59(e) motion is also appropriate "to accommodate an intervening change in controlling law" or "to account for new evidence not available at trial." *Zinkand*, 478 F.3d at 637 (citation and quotation marks omitted). ZP does not rely on either of those bases.

("[C]lear error occurs when a district court's factual findings are against the clear weight of the evidence considered as a whole.") (citation and quotation marks omitted). Manifest injustice occurs where the court "has patently misunderstood a party, [] has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension." *Tiber Creek Partners, LLC v. Ellume USA LLC*, No. 1:23-cv-148, 2023 WL 5987385, at *3 (E.D. Va. Aug. 1, 2023), *aff'd*, No. 23-1882, 2025 WL 1950071 (4th Cir. July 16, 2025) (citation and quotation marks omitted) (adopting the rule applied in this District).

### III.   ANALYSIS

#### A.   Stipulation

The Court did not make a "clear error of law" when it denied ZP's request for pre-judgment interest based on a finding that the parties failed to stipulate to have the Court decide the issue. *Zinkand*, 478 F.3d at 637. Nor did the Court "misapprehend [] the parties' agreement" as to whether to stipulate to change the factfinder from jury to judge. ECF No. 441 at 7. On the contrary, after another round of briefing, the Court is more convinced than ever that the parties never intended to enter a stipulation on this issue at all.

However, new, undisputed evidence—the Watterson declaration—demonstrates that the parties both expected the Court to complete the final calculation of pre-judgment interest *absent* a stipulation. The parties' joint submission of the proposed special verdict form memorialized that expectation on the record. Therefore, to "prevent manifest injustice," the Court will construe the parties'

6

shared misunderstanding as a stipulation sufficient to satisfy Fed. R. Civ. P. 39(a). *Zinkand*, 478 F.3d at 637.

The relevant information in the Watterson declaration was available to ZP since before trial, but ZP did not provide it to the Court until this second round of briefing on pre-judgment interest. Rule 59(e) generally does not enable the moving party to "address new arguments or evidence that [it] could have raised before the decision issued." *Banister v. Davis*, 590 U.S. 504, 508 (2020). Nevertheless, the Court will consider ZP's new evidence here, for two reasons: First, Huffman does not contend that the Watterson declaration should be excluded, nor does it dispute that the substantive assertions therein are true. *See* ECF No. 446 at 4. Second, the new evidence serves to illuminate two issues that were always present but went unexplained in the earlier briefing. *See infra* n. 4 & 5.

Attorney Watterson describes an exchange in which ZP explained that it drafted the proposed special verdict form to enable the Court to find facts with respect to pre-judgment interest. *See* ECF No. 441-1. ZP never claims—in the Watterson declaration or elsewhere—that it ever proposed a stipulation, described the verdict form as such, or even mentioned to Huffman the idea of changing the default factfinder on pre-judgment interest. If ZP had always intended the advisory language following Question 2 to be a stipulation, ZP could have provided evidence about the discussion in which the stipulation was reached. Without that evidence, the Court must conclude that the parties never had such a discussion.

7

But Attorney Watterson nevertheless believed, at the time of the conversation about the draft verdict form, that "the Court [w]ould decide all issues relating to pre[-]judgment interest other than the date of the breach." ECF No. 441-1 ¶ 7. From this apparent inconsistency the Court concludes that ZP had a misconception about the law related to pre-judgment interest: It must have thought the Court was the *default* finder of fact.

This is the only explanation that accounts for the advisory language in the verdict form and the fact that no one ever seems to have discussed the 'stipulation' required under Rule 39(a). It also explains all the indications, discussed in the Court's Opinion and Order on the motion for entry of judgment, that the parties did not intend the language on the verdict form to function as a stipulation within the meaning of Rule 39(a). *See* ECF No. 430.[4] It is now clear to the Court that ZP believed no stipulation was required.

---

[4] This explanation also clears up some confusion left over from the briefing on the motion for entry of judgment, about why the parties asked the jury to determine the date of Huffman's breach, in Question 3. In its earlier briefing, ZP asserted—incorrectly—that pre-judgment interest accrues from the date a contract is breached, as a matter of law. ECF No. 420 at 2. In reality, the date pre-judgment interest begins to accrue is a question of fact under Virginia law. Va. Code § 8.01-382 (the jury—or, if there is no jury, the court—to "fix the period at which the interest shall commence"). *See also Dairyland*, 449 S.E.2d at 801. The Court did not think much of that error at first, because ZP's misunderstanding of the law seemed to explain why it wanted the jury to find the date of the breach. But that did not entirely make sense, because ZP contends the parties stipulated to make the *Court* the factfinder on pre-judgment interest. So the purpose of Question 3 was not clear.

Additionally, the Court thought that it would be strange for the parties to designate the Court as factfinder by telling the jury not to consider an issue, rather than by telling the Court directly that its role had expanded—which is what ZP claims the parties did by memorializing their agreement in the advisory language following

But it is also clear that Huffman had the same misapprehension. When presented with ZP's proposed verdict form, Huffman's attorney "did not edit or make any comment on the instructive language following Question 2." ECF No. 441-1 ¶ 6. And once Attorney Watterson explained the purported purpose of Question 3, Huffman's attorney agreed "without discussion, comment, or objection." *Id.* ¶ 8.[5]

Based on this evidence, the Court remains convinced that the parties did not *mean* to "file a stipulation to a nonjury trial" on pre-judgment interest "or so stipulate on the record." Fed. R. Civ. P. 39(a). Instead it appears that, until Huffman discovered this requirement and presented it to ZP in the opposition brief on the motion for entry of judgment, neither party believed a stipulation was needed.[6]

---

Question 2 on the verdict form. But it is much less strange for the parties to designate an issue for the *jury* by presenting them with a specific question. The Court now understands that this was the purpose of Question 3: Because the parties believed the Court would find all the facts related to pre-judgment by default, they specifically designated the date of the breach for the jury to determine instead.

[5] Again, this evidence explains something that was previously confusing. In several instances ZP made statements that could have suggested it assumed the Court would serve as the factfinder on pre-judgment interest; and in each case, Huffman did not object or seek clarification. The Court previously thought this might have been the result of a strategic decision on Huffman's part, to avoid flagging the absence of a stipulation and ZP's failure to prove pre-judgment interest to the jury until after the evidence was closed. But that explanation attributed a degree of underhandedness to Huffman's counsel that was not entirely consistent with the Court's impression of how they handled this case. It makes much more sense that ZP misstated the law, Huffman accepted that misstatement, and both parties proceeded to trial without intentionally entering a stipulation, believing that the Court would by default calculate pre-judgment interest, using the date the jury found Huffman breached the contract.

[6] ZP contends that the verdict form language must have been intended as a stipulation because, as a matter of Virginia law, pre-judgment interest is the only type of judgment interest that *can* be determined by a jury, so it is the only type that *could* be removed from the jury by stipulation. ECF No. 41 at 11. That reasoning fails

This puts the Court in a difficult position. On one hand, the Court is reluctant to find that a stipulation can arise from a mutual belief that no stipulation is required. *See* STIPULATION, Black's Law Dictionary (12th ed. 2024) (requiring "[a] *voluntary* agreement") (emphasis added). And given the contract-like nature of stipulations, the Court is loath to attribute meaning to the parties' language that the words themselves do not clearly carry and that the drafters did not intend. *See* 83 C.J.S. Stipulations § 1 ("In essence, a stipulation is a contract, or at least akin to one, and is entitled to all the sanctity of a convention contract."); *cf. Lutz v. Turner Broad. Sys., Inc.*, No. 1:15-cv-28, 2015 WL 13756071, at *4 (N.D. W.Va. June 12, 2015) (finding no stipulation where the parties never mentioned the words "stipulation" or "agreement" and "no written stipulation was prepared").

However, it would be equally strange to ignore the parties' mutual understanding about who would determine pre-judgment interest—especially when the jury nevertheless *did* find facts that could form the basis for such an award.

To resolve this dilemma, the Court reads Rule 39(a)'s stipulation requirement to encompass an agreement between the parties and memorialization on the record but *not* a meeting of the minds as to the effect of the stipulation. In other words, it is possible to enter a stipulation to change the factfinder from jury to judge without

---

because it relies on the fallacy of affirming the consequent. The argument proceeds as follows: (1) If the verdict form language is a stipulation, then it can only refer to pre-judgment (not post-judgment) interest. (2) The language can only refer to pre-judgment interest. Therefore, (3) the language must be a stipulation. That is incorrect as a matter of logic.

realizing that such a stipulation is required, if the parties state on the record that they agree who the factfinder will be.

The "reasoning" in the Opinion and Order on entry of judgment was correct. *Tiber Creek*, 2023 WL 5987385, at *3. And to the extent the Court "[mis]apprehend[ded]" the parties' agreement, it did so because ZP—after discovering its *own* legal error—failed to provide evidence of that agreement timely. *Id.* But Rule 39(e) enables the Court to alter its decision "to prevent manifest injustice" to the parties, even when the fault lies with their lawyers.

After considering all the evidence now in the record, the Court concludes that the parties agreed, at the time they submitted the proposed special verdict form, that the Court would determine all issues related to pre-judgment besides the date of Huffman's breach. That constituted a stipulation within the meaning of Rule 39(a).

## B.   Pre-Judgment Interest Calculation

ZP requests interest on the total damages award at 6% per year, compounded annually, starting from the December 6, 2022 breach. ECF No. 427 at 6 (reply in support of the motion for entry of judgment); *see* ECF No. 441 at 18 n.7 (incorporating argument from the reply brief). Despite ZP's fervent argument to the contrary, Huffman never asks the Court to apply another method. *Compare* ECF No. 427 at 6 (disputing contentions Huffman made in an email never provided to the Court) *with* ECF Nos. 421 at 3 (pointing out that the jury could have awarded interest on only part of the damages, but never arguing that the Court should apply any particular calculation method), 446 at 6 (contending that because the jury did not designate

11

which portion of damages should accrue pre-judgment interest, the Court lacks the facts it would need to award such interest—but again making no argument about how the Court should calculate pre-judgment interest if it were to do so).

However, that does not mean the Court is required to accept ZP's proposed approach. As explained briefly above, the amount of pre-judgment interest and the time when it begins to accrue are both questions of fact under Virginia law. Va. Code § 8.01-382. Though the Court will enforce the parties' agreement that it should "decide all issues relating to pre[-]judgment interest other than the date of the breach," 441-1 ¶ 7, the Court is not bound by ZP's incorrect belief that the date of the breach is the only fact required to determine pre-judgment interest. *Compare* ECF No. 441 at 17 (asserting "[t]he Court has everything it needs . . . based on the verdict form and the parties' agreement") *with Dairyland*, 449 S.E.2d at 801 (explaining that Va. Code § 8.01-382 empowers "the trier of fact" to award pre-judgment interest on a "discretionary" basis "and fix the time of its commencement") (emphasis removed).

Based upon the evidence presented at trial and the supplemental declaration of ZP's damages expert, ECF No. 441-3, the Court concludes that the jury's verdict of $9,137,159.00 included $5,395,404.37 in lost profits and $3,741,753.63 in other damages. ECF No. 441-3 ¶ 6. The Court calculates pre-judgment interest on the first sum by tallying profits monthly from December 2022 (the month of the breach, *see* ECF No. 414 at 2) through April 2025 (the last month ZP asserts it lost profits, *see* ECF No. 441-3 at 10) and applying a 6% yearly interest rate, compounded annually, to the running total. *See* Va. Code § 6.2-301 (legal rate of interest). Pre-judgment

12

interest on the remaining damages is also calculated at 6% per year, compounded annually.

ZP proposes that interest continues to accrue until the Court rules on the present motion. ECF No. 441-3 ¶¶ 9, 13, 15. But ZP is not entitled to additional interest based on the time it took to brief these issues twice and for the Court to reach and articulate two decisions. That time is attributable to ZP's attorneys' haphazard handling of the law and the record, not to Huffman's breach. Therefore, the end date for both calculations is the date of the jury's verdict: December 15, 2025. This results in a pre-judgment interest award of $1,353,790.13 in total.

## IV.   CONCLUSION

Plaintiff ZP No. 332, LLC's motion to alter judgment (ECF No. 440) is **GRANTED**. The judgment against Defendant Huffman Contractors, Inc. shall be amended to add pre-judgment interest in the amount of $1,353,790.13.

An amended judgment shall be filed contemporaneously with this Opinion and Order at ECF No. 466.

Pursuant to 28 U.S.C. § 1963, ZP is granted leave to register the amended judgment in other jurisdictions where Huffman has assets.

The Court authorizes immediate execution of the amended judgment in other jurisdictions where Huffman has assets.

The Clerk is **DIRECTED** to enter all documents that may be necessary and proper for the registration of the amended judgment, including—without limitation—any certifications required by the registering jurisdiction.

**IT IS SO ORDERED**.

/s/

Norfolk, Virginia
June 15, 2026

Jamar K. Walker
United States District Judge